******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# GRIFFIN HOSPITAL *v.* ISOTHRIVE, LLC
## (AC 43714)

Alvord, Clark and Bishop, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for breach of contract, alleging that the defendant had failed to make the final payment for services rendered. The parties had entered into a research agreement for the plaintiff to study the potential benefits of the defendant's nutrition supplement on a certain group of individuals. The agreement was amended and was accompanied by a revised protocol concerning the characteristics of individuals suitable for the study. The defendant filed a counterclaim alleging that the plaintiff breached the parties' contract by, inter alia, failing to comply with the requirements of the agreement and the protocol regarding the population of individuals to be included in the study. Following a trial to the court, the court awarded the plaintiff damages for the defendant's breach of contract and prejudgment interest based on its finding that the defendant had wrongfully withheld funds from the plaintiff, and the defendant appealed to this court. *Held*:

1. The trial court properly concluded that the defendant had breached the research agreement by failing to pay a final invoice, the plaintiff having conducted the study in accordance with the agreement: contrary to the defendant's claim, the plaintiff was not obligated, under the definitive terms of the revised protocol and amended agreement, to perform any analysis to determine whether certain medications had the potential to interact with the ingredients in the supplement, as the language of the parties' revised protocol unambiguously provided that the plaintiff was required to exclude only potential study participants with diabetes or hypertension who were taking medication with a known potential to interact with the supplement; moreover, the language of the revised protocol, including the term "overweight but otherwise healthy," was clear and unambiguous with respect to the selection of study participants, as it set forth the criteria that, if met, would allow prospective participants to enroll in the study and detailed the criteria that would exclude a prospective participant from the study; furthermore, there was ample evidence in the record to support the court's finding that the plaintiff performed its obligations under the contract, including the selection of study participants, and the fact that the defendant did not obtain the results it wanted from the study did not constitute a breach of contract nor did it negate its obligation to pay the amount due on the final invoice.

2. This court concluded that the trial court did not abuse its discretion by awarding prejudgment interest to the plaintiff pursuant to the applicable statute (§ 37-3a), as the record supported the court's finding that the defendant had no good faith basis to withhold final payment and, therefore, doing so was a wrongful detention of money due under the contract.

Argued September 22, 2021—officially released March 15, 2022

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Wilson, J.*; judgment for the plaintiff on the complaint and on the counterclaim, from which the defendant appealed to this court. *Affirmed.*

*Matthew D. Popilowski*, for the appellant (defendant).

*Peter T. Fay*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This appeal concerns a dispute between the parties arising out of an agreement to study the potential benefits of a certain nutrition supplement on a group of overweight but otherwise healthy individuals. The central question at issue in this appeal is whether the plaintiff, Griffin Hospital,[1] conducted the study in accordance with the study protocol agreed upon by the parties. After trial, the court found in favor of the plaintiff, concluding that the defendant, ISOThrive, LLC, had breached the research agreement by failing to pay a final invoice. The court found for the plaintiff, as well, on the defendant's counterclaim, which alleged that the plaintiff had breached the research agreement by failing to conduct the study in accordance with the agreement's research study protocol. Accordingly, the court awarded the plaintiff $68,204.12 on its breach of contract claim. Additionally, the court ordered the defendant to pay prejudgment interest at the rate of 8 percent for its wrongful detention of funds due to the plaintiff. This appeal followed.

On appeal, the defendant argues that the court improperly (1) concluded that the plaintiff was not obligated to perform an analysis to determine whether certain medications had the potential to interact with the supplement, (2) concluded that the term "overweight but otherwise healthy" was governed exclusively by the inclusion and exclusion criteria set forth in the parties' agreement, (3) concluded that the plaintiff performed the study in accordance with the agreement, (4) awarded prejudgment interest to the plaintiff, and (5) found against the defendant on its counterclaim.[2] We affirm the judgment of the court.

We briefly set forth the standards of review applicable to the defendant's various claims. In addressing the defendant's claims regarding the court's interpretation of the parties' agreement, our review implicates the court's factual findings as well as its interpretation of the contract. As to the defendant's claims that challenge the court's factual findings, we apply the clearly erroneous standard of review to determine whether the record supports the court's factual findings. See *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 158, 117 A.3d 876, cert. denied, 318 Conn. 902, 122 A.3d 631 (2015), and cert. denied, 318 Conn. 902, 123 A.3d 882 (2015). As to the defendant's claims that challenge the court's legal conclusions, "our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Sun Val, LLC* v. *Commissioner of Transportation*, 330 Conn. 316, 325–26, 193 A.3d 1192 (2018). Lastly, as to the defendant's claim that the court improperly awarded prejudgment interest, as authorized by General Statutes § 37-3a, we apply an

abuse of discretion standard of review. See *Riley* v. *Travelers Home & Marine Ins. Co.*, 173 Conn. App. 422, 460–61, 163 A.3d 1246 (2017) ("The decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.)), aff'd, 333 Conn. 60, 214 A.3d 345 (2019).

This matter was tried to the court over the course of three days in January, 2019. In its memorandum of decision, the court found the following facts. "In October, 2014, the defendant entered into a research agreement with the plaintiff, which the defendant's [chief executive officer], Jack Oswald, signed on behalf of the defendant on October 24, 2014. The agreement provided that the plaintiff would provide its research services pursuant to the study protocol and would provide the defendant with a final written report. The agreement also provided that the plaintiff would invoice the defendant according to the following schedule: 50 percent upon execution of the agreement, 40 percent at the six month mark, and 10 percent upon completion of the study and final report. The defendant was to pay the invoices within thirty days. The parties signed a Supplemental Agreement, effective April 17, 2015, which called for a final budget of $302,403. The defendant has made payments of $224,731.40. On December 18, 2015, the plaintiff issued a final invoice to the defendant in the amount of $68,204.12 [which the defendant declined to pay]."

During the course of their dealings, the parties amended their "agreement to reflect the fact that the defendant had decided to change the study design. The amended agreement was effective March 23, 2015, and signed by Jack Oswald on April 2, 2015. Attached to the amended agreement was a revised protocol, which stated that the study's purpose was '[t]o compare the effects of daily intake of the [defendant's] supplement [versus] a placebo on the primary outcome measure of body weight and secondary outcome measures (hunger/satiety, health-related measures and self-reported quality of life) in a group of overweight but otherwise healthy adults.' The revised protocol provided that the study would be of '105 overweight men and women in the age range of 18 to 75 years, who are nonsmokers with a body mass index (BMI) ≥ 25, and a maximum body weight of 350 pounds (due to limitations of the weight scale). *Individuals with diabetes or hypertension will be included in the study if they are not taking medications with a known potential to interact with ingredients in the supplement.*' "[3] (Emphasis in original.)

In its decision, the court found that "[i]t is undisputed

that the defendant contracted with the plaintiff to perform a clinical trial, and agreed to pay for such services. It is equally undisputed that the defendant failed to pay the final invoice, despite demand from the plaintiff and the fact that the plaintiff sent a final report on February 23, 2016, and a revised final report on July 14, 2016, as required by the contract." The court awarded the plaintiff $68,204.12 in contract damages and, in addition, prejudgment interest at the rate of 8 percent on the basis of its finding that the defendant had wrongfully withheld funds from the plaintiff. This appeal followed. Additional facts will be set forth as necessary.

The defendant first argues that the court erred in concluding that the plaintiff was not obligated, under the definitive terms of the revised protocol and amended agreement, to perform any analysis to determine whether certain medications had the potential to interact with the ingredients of the supplement under study. We disagree.

Subsequent to the parties' initial agreement, they agreed to a revised protocol for the study concerning the characteristics of individuals suitable for the study. The protocol detailed both inclusion and exclusion criteria. At trial, the parties were not in agreement regarding the terms of this protocol as to the characteristics of potential subjects for inclusion and for exclusion. The court's task, then, was to interpret the relevant provisions of the protocol. In doing so, the court was performing the legal task of contract interpretation. Accordingly, as noted, our review of this claim is plenary.

The relevant provision of the revised protocol states that "[i]ndividuals with diabetes or hypertension will be included in the study if they are not taking medications with a known potential to interact with ingredients in the supplement." On the basis of our review of the revised protocol, including the provision in question, we agree with the trial court's conclusion that "[t]he revised protocol did not exclude persons with a current use of antibiotics and the plaintiff was not obligated by the terms of the agreement to undertake any form of analysis to determine whether a medication had a potential to interact with the ingredients of the supplement."

It is well established that "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003). Here, we agree with the trial court's determination that the language of the revised protocol unambiguously provides that the plaintiff was only required to exclude potential study participants with diabetes or hypertension who were taking

medication with a *known* potential to interact with the supplement. Accordingly, the unambiguous language of the parties' agreement does not support the defendant's claim that the plaintiff was required to conduct a particular analysis to determine whether a participant's medication might interact with the defendant's supplement.

The defendant next argues that the court erred in concluding that the term "overweight but otherwise healthy" in the revised protocol was unambiguous and governed exclusively by the inclusion and exclusion criteria. This argument is similarly unavailing. On the basis of our review, we determine that the court's conclusions regarding this claim were legally correct.

Notwithstanding the defendant's framing of this claim, our review of the court's memorandum of decision reveals that the court did not conclude that the term "overweight but otherwise healthy" was governed exclusively by the inclusion and exclusion criteria. Rather, the court stated that "[t]he phrase 'overweight but otherwise healthy' must be understood in the context of the inclusion and exclusion criteria; the language of the revised protocol makes no sense otherwise."

When reviewing a court's determination regarding the ambiguity of an agreement, we reiterate that a "contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 103, 84 A.3d 828 (2014). Additionally, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) Id.

Accordingly, on the basis of our review, we agree with the trial court that the language of the revised protocol is clear and unambiguous with respect to the selection of study participants. It sets forth the criteria that, if met, would allow prospective participants to enroll in the study. The revised protocol similarly details the criteria that would exclude a prospective participant from the study. See *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 468, 54 A.3d 1005 (2012) ("[a] court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity" (internal quotation marks omitted)).

The defendant also argues that the court erred in concluding that the plaintiff performed the study in accordance with the agreement. Specifically, the defendant argues that the plaintiff did not comply with the agreement because (1) the study participants included individuals who were not "otherwise healthy" and individuals who were taking medication that interacted with the supplement; (2) the number of obese individuals who participated in the study exceeded the agreed

to percentage; and (3) the plaintiff failed to produce a written report containing all of the requisite analyses. This claim implicates the court's fact-finding function.

After our careful review, we conclude that there is ample evidence in the record to support the court's finding that "the plaintiff performed its obligations under the contract. . . . The fact that the defendant did not obtain the results it wanted from the study does not constitute a breach of contract nor does it negate its obligation to pay the amount due on the final invoice."

The defendant next argues that the trial court erred in awarding prejudgment interest to the plaintiff pursuant to § 37-3a.[4] More specifically, the defendant argues that "there existed additional good faith reasons for [the defendant] to refuse to pay the final invoice."

"The purpose of § 37-3a is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *Riley* v. *Travelers Home & Marine Ins. Co.*, supra, 173 Conn. App. 461; see also *Ballou* v. *Law Offices Howard Lee Schiff, P.C.*, 304 Conn. 348, 365, 39 A.3d 1075 (2012) ("under § 37-3a (a), an interest rate of less than 10 percent is presumptively valid, and therefore will be upheld, unless the party challenging the rate set by the court can demonstrate that it represents an abuse of discretion").

In awarding prejudgment interest, the court first found "that the plaintiff performed its obligations under the contract" and that "[t]he evidence presented at trial, including the facts stipulated to by the parties, clearly establishes that it was the parties' agreement that the defendant would pay the final invoice within thirty days after receipt of the final report." The court additionally found that "[t]he plaintiff delivered the Revised Final Report on July 14, 2016," but "[t]he defendant has refused to pay the invoice, and the evidence establishes that it had no good faith basis for refusing to pay because its argument that the inclusion and exclusion criteria did not specify who could be enrolled in the study in accordance with the Revised Protocol strains credulity."

On the basis of our review of the procedural history of this matter and the trial court's findings as set forth in its memorandum of decision, we conclude that the court did not abuse its discretion by awarding prejudgment interest. This is because the record supports the court's finding that the defendant had no good faith basis to withhold final payment and, therefore, doing so was a wrongful detention of money due under the contract.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the plaintiff in this matter is Griffin Hospital, the research which is the subject of this appeal was conducted by the Yale-Griffin Prevention Research Center, a division of the plaintiff.

[2] In its counterclaim, the defendant sought damages on the basis of the plaintiff's alleged breaches of the parties' agreement by not following the protocol established for the study, by failing to provide certain analyses in its study report and by publicly posting the study results. On review, we need not separately reach the defendant's counterclaim because our resolution of the appeal affirming the trial court's awards to the plaintiff subsumes and resolves, by necessity, the defendant's arguments in support of its counterclaim.

[3] The revised protocol set forth the following exclusion criteria: "Pregnant and/or lactating women"; "Evidence or history of substance or alcohol abuse (include if over [five] years)"; "History of major depression, bipolar disorder or schizophrenia, any type of obsessive-compulsive disorder"; "Current history of migraine headaches (include if controlled with medication)"; "Current use of any prescription or non-prescription weight loss products"; "Tobacco use"; "Active eating disorder including anorexia nervosa and bulimia"; "Known sensitivity or allergy to any of the ingredients in the product"; "Symptomatic coronary artery disease or congestive heart failure"; "History of a stroke in the past year"; "Symptomatic arrhythmia"; "Uncontrolled hypertension (i.e., systolic pressure >180 mmHg and or diastolic > 100mmHg)"; "History of a seizure in the past [five] years"; "Any cancer in the past [five] years other than non-melanoma skin cancer or in-situ cervical cancer"; "Active or history of inflammatory bowel disease"; "Current use of TNF-alpha inhibitor medications"; "Current use of COX-2 inhibitor medications"; "Current use of JAK inhibitor medications"; "History of weight loss procedures including bariatric surgery"; and "[H]abitual use of prebiotic supplements or more than occasional consumption of naturally fermented foods, including probiotics such as kimchi and sauerkraut."

[4] General Statutes § 37-3a (a) provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."